UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HERMES HIALEAH WAREHOUSE, LLC                        PLAINTIFF

VS.                          CIVIL ACTION NO. 3:22-cv-215-TSL-MTP

GFE NY, LLC, BORIS MUSHEYEV,
VIACHESLAVE ELIYAYEV, JAN
WIMPFHEIMER, DANNY FULDA
AND JOHN DOES 1-20                                   DEFENDANTS


MEMORANDUM OPINION AND ORDER

    This cause is before the court on the motion of

defendant/counter-plaintiff GFE NY, LLC (GFE), filed pursuant to

Federal Rule of Civil Procedure 12(b)(6), to dismiss the first

amended complaint for failure to state a claim upon which relief

can be granted.  Plaintiff Hermes Hialeah Warehouse, LLC

(Hermes) has responded to the motion, and the court, having

considered the memoranda of authorities submitted by the

parties, concludes the motion should be denied.

    I. BACKGROUND AND FIRST AMENDED COMPLAINT

    The first amended complaint alleges the following facts.

Hermes is a Florida limited liability company wholly owned by

Ted Doukas (Doukas) and his wife, Giselle Teixera Doukas.  Prior

to the formation of Hermes in 2014, Doukas, through another of

his companies, 2 Lisa Court Corp., acquired and for thirteen

years had continuously owned a certain commercial property in Meridian, Mississippi, known as Mid-Continental Terminal.  Mr. Doukas, through Hermes and other companies he owned, infused over $800,000 into the Meridian property for rehabilitation and environmental work/studies.  In September 2016, 2 Lisa Court Corp. executed a Deed of Trust in favor of Hermes for $800,000, and the following month, October 2016, transferred the subject property to Hermes via quitclaim deed to satisfy the inter-company loans from Hermes.

In 2018, Doukas was approached by a fellow businessman, Panagiotis Kechagias (Panos), about purchasing the subject property through a company he owned, Hellenic Petroleum, LLC (Helenic).  While there were discussions about a sale, no money was ever paid by Panos or Hellenic for the property and the property was never conveyed to Panos, Hellenic or any other company Panos controlled.  Despite this, in June 2018, without authorization from Doukas, Panos and Hellenic filed an amended annual report with the Florida Department of State, Division of Corporations, which identified Hellenic Petroleum as the managing member of Hermes.[1]  Upon learning of this filing in

---

1    Doukas had filed annual returns each year beginning in 2015, and including 2018 which showed him as the sole manager/managing member.

October 2018, Doukas filed another amended annual report, making clear that he was the only manager or managing member of Hermes. In 2019, he filed Hermes' 2019 annual report, listing himself as the only authorized representative of the company.  But in September 2019, again without Doukas's knowledge or authorization, Panos and Hellenic filed an amended annual report wrongfully and fraudulently claiming that Hellenic controlled Hermes.  The following month, October 2019, Panos, purporting to act on behalf of Hermes, executed a Deed of Trust on the Meridian property to secure a $1,521,540 obligation allegedly owed by Hellenic to defendant GFE.  Panos executed the Deed of Trust in his capacity as the sole member of Hellenic, which was identified as the sole member of Hermes, the grantor. Thereafter, Panos, again purporting to act on behalf of Hermes, executed Deeds of Trust on the property in November 2020 and June 2021 to secure, respectively, $1,521,450 and $750,000 obligations allegedly owed by Hellenic to GFE.  According to identical recitations in each instrument, the Deeds of Trust were executed to secure payment of debts owed under certain

> Merchant Agreement[s] by and between Grantor [Hermes]
> and Beneficiary [GFE] [by which] … GFE has agreed to
> purchase from Grantor (Hermes) and Hellenic Petroleum
> … ("Hellenic" and collectively with Grantor,
> "Merchant") all of Merchant's future accounts,
> contract rights and other entitlements arising from or

> relating to the payment of monies from Merchant's
> customers … until the … [Purchased Amount] has been
> delivered by or on behalf of Merchant to Beneficiary.

The Deeds of Trust further recited that Hermes was "owned by or is under common control with Hellenic" (and/or other Panos-controlled companies), and that Hermes acknowledges it "will benefit financially and receive substantial consideration and substantially equal value from Hellenic['s] execution and performance of the Merchant Agreement."

Hermes alleges that at all times, including the times the Deeds of Trust were executed, Doukas was the only authorized representative of Hermes; that neither Doukas, Mrs. Doukas, nor any other person or company authorized to act on behalf of Hermes executed any of these unauthorized Deeds of Trust; that Panos was not authorized to act or sign any document on behalf of Hermes and certainly was not authorized to execute any of these Deeds of Trust; that contrary to recitations in the Deeds of Trust, Hermes did not receive any funds advanced to Hellenic by GFE; and that the address shown for Hermes on the Deeds of Trust was never the address for Hermes.

On March 21, 2022, Hermes learned through a notice published in the Meridian Star newspaper that GFE had scheduled a foreclosure sale of Hermes' Meridian property for March 24,

4

2022.  On March 23, 2022, Hermes filed suit in the Chancery
Court of Lauderdale County, seeking a temporary restraining
order, preliminary injunction and permanent injunction against
the foreclosure (Count I); a declaratory judgment that the
unauthorized Deeds of Trust are unenforceable (Count II); and an
order quieting title in Hermes (Count III).  In addition to
declaratory and injunctive relief, Hermes also demanded
compensatory and punitive damages.  The chancery court entered a
temporary restraining order on March 23, and scheduled a hearing
on Hermes' motion for preliminary injunction.  On March 31, an
agreed order was entered granting a preliminary injunction until
such time as the issues raised in this litigation have been
resolved.  GFE thereafter timely removed the case on the basis
of diversity jurisdiction.

Following removal, GFE filed its answer, denying Hermes'
allegations of wrongdoing and alleging "a good faith belief that
the GFE Deeds of Trust were duly authorized and executed on
behalf of Plaintiff."  GFE also counterclaimed for a judgment of
judicial foreclosure pursuant to Mississippi Code Annotated §
11-5-95, and for a declaratory judgment establishing that during
the 2019 – 2021 time period, Panos was authorized to act on
behalf of Hermes, including entering into and executing the

Merchant Agreements, the GFE Deeds of Trust, and all other agreements on behalf of Hermes; that Hermes benefited financially and received substantial consideration and substantially equal value from Hellenic's execution and performance of the Merchant Agreements; that "each of the Agreements, including but not limited to the Merchant Agreements and the GFE Deeds of Trust, are valid and binding contracts to which GFE and Hermes Hialeah are parties"; that "Events of Default exist under the Merchant Agreements, the GFE Deeds of Trust and/or other Agreements"; and that "GFE is entitled to foreclose its security interests in and to" the subject property. GFE attached copies of the various merchant Agreements to its answer/counterclaim.

Upon receipt and review of the Merchant Agreements, Hermes moved to amend its complaint to include additional allegations and claims, including a claim or claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, against GFE and its individual owners relating to their alleged "fraudulent and usurious Merchant Agreements." The motion was granted, and on September 22, 2022, Hermes filed its amended complaint, asserting the following claims for relief:

Count I, for Injunctive Relief, seeks immediate and permanent injunctive relief on the basis that Hermes did not authorize the grant or assignment of any interest in the subject property to GFE.

Count II seeks a Declaratory Judgment that the unauthorized Deeds of Trust in the subject property were not granted by anyone with corporate authority for Hermes, are not supported by any enforceable lending relationship by and between GFE and Hermes, and are premised on an indebtedness that is illegal and unenforceable, such that the unauthorized Deeds of Trust are unenforceable, defendants have no rights against the subject property and Hermes is entitled to its use and enjoyment of the property without further interference or cloud.

Count III, entitled "False Lien Filing in Land Records," charges that defendants filed the unauthorized Deeds of Trust "knowing of their illegal activities and that the foundation of the deeds of trust and lien filings was false," warranting "penalty and treble damages under Mississippi law."

Count IV is a RICO claim alleging collection of an unlawful debt and a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), and Count V alleges conspiracy under RICO, § 1962(d), generally charging that defendants, an association-in-

fact, engaged in an ongoing practice of locating and soliciting merchants, and offering them funding under so-called "Merchant Agreements," which were, in substance and fact, illegal loans that violated criminal usury statutes.  Hermes alleges that because of their usurious nature, the debts evidenced by the Merchant Agreements entered by defendants constitute unlawful debt within the meaning of 18 U.S.C. § 1962(c) and (d), and therefore, the Merchant Agreements are void and unenforceable, making the Deeds of Trust entered in connection therewith likewise void and unenforceable.  Hermes alleges that it "has and will continue to be injured in its business and property by reason of [defendants'] violations of 18 U.S.C. § 1962(c)," with its damages alleged to include "the cloud in title placed … on account of the usurious and otherwise unenforceable Deeds of Trust begotten by fraudulent, usurious and unenforceable Merchant Agreements, as well as attorneys' fees and costs, including [those] associated with exposing and prosecuting these unlawful activities."

Finally, Count VI seeks to remove the cloud on Hermes' title to the subject property resulting from the unauthorized Deeds of Trust filed by GFE.

II.   <u>RULE 12(b)(6) STANDARD</u>

To state a claim for relief sufficient to avoid dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 678, 129 S. Ct. 1937.  The complaint "'does not need detailed factual allegations,' but [it] must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level'." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955).  Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 338 (5th Cir. 2008) (quoting <u>Tellabs, Inc. v. Makor Issues & Rights,</u>

Ltd., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).

III. ANALYSIS

A. COUNT I:  Injunctive Relief

GFE argues, in effect, that Count I is moot because injunctive relief has already been granted by the Agreed Order Regarding Preliminary Injunction entered by the state chancery court prior to removal.  However, while that order may have resolved Hermes' demand for a *preliminary* injunction, there remains outstanding its request for a *permanent* injunction.

B. STANDING

GFE argues that Counts IV (RICO), V (RICO conspiracy), and the portions of Counts II (Declaratory Judgment) and III (False Lien Filing) premised on Hermes' allegation that the Merchant Agreements violate New York's criminal usury statute, must be dismissed on various grounds, mostly relating to an alleged lack of standing.2  "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This

---

2    While a plaintiff must establish standing for each claim it asserts, DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006), GFE's standing arguments are aimed at Hermes' claims challenging the validity/ enforceability of the Merchant Agreements and not Hermes' claim that the Deeds of Trust are void and unenforceable because they were not executed by anyone with corporate authority to act on behalf of Hermes.

inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004)).  Constitutional standing requires that the plaintiff suffer "an injury in fact ... which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting Allen v. Wright, 468 U.S. 737, 756, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)).  "The 'prudential standing rule ... bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'"  Suarez, 791 F.3d at 366 (quoting Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86 (2d Cir. 2014)).  GFE argues that the referenced counts (or portions of counts) of Hermes' complaint must be dismissed because Hermes lacks both prudential and constitutional standing.  In substance, its arguments focus almost exclusively on matters of prudential standing.3

---

3    Of 45 pages of briefing, only the final three paragraphs of GFE's opening brief addresses constitutional standing.  In those paragraphs, GFE simply lists the requirements for constitutional standing and declares that the complaint fails to "put forth sufficient factual allegations to establish any 'injury in fact'

Under New York law, which the parties agree governs the issue of the validity/enforceability of the Merchant Agreements, "[i]t is well settled that in order to have standing to challenge a contract, a nonparty to the contract must either suffer direct harm flowing from the contract or be a third-party beneficiary thereof."  Decolator, Cohen & DiPrisco v. Lysaght, Lysaght & Kramer, 304 A.D.2d 86, 90, 756 N.Y.S.2d 147, 2003 WL 355592 (N.Y.A.D. 1 Dept., Feb. 18, 2003).  GFE argues that Hermes lacks standing to challenge the validity of the Merchant Agreements because Hermes, which was not a party to the Merchant Agreements, has not alleged that it was a third-party beneficiary of the Merchant Agreements and has not sufficiently alleged any direct harm flowing to it from the Merchant Agreements.  In response, Hermes acknowledges that it is not a party to the Merchant Agreements, but it contends that it has standing both because it is an intended third-party beneficiary of the agreements and because it suffered direct harm flowing

---

as a result of GFE's recording of void/unenforceable Deeds of Trust and/or alleged civil RICO violations" and has failed to offer factually sufficient allegations "as to each of the other essential elements of Article III standing."  The court is not persuaded.  GFE has otherwise addressed the sufficiency of Hermes' damages allegations as elements of its claims for relief and as required to establish prudential standing under RICO. These arguments are addressed in the text.

from the agreements.

### 1. Third-Party Beneficiary

Hermes, while not a party to the Merchant Agreements, is ostensibly connected to the Merchant Agreements by the Deeds of Trust, which by their terms, purport to "bind Hermes and the [Meridian] Property" as security for the obligations owed under the Merchant Agreements.  The Deeds of Trust contain express representations that Hermes is "under common control" with the "Merchant" (Hellenic), and that Hermes "will benefit financially and receive substantial consideration and substantially equal value from Hellenic's execution and performance of the Merchant Agreement[s]."[4]

GFE notes that not only has Hermes not alleged that it is an intended third-party beneficiary of the Merchant Agreements, it has, to the contrary, expressly alleged that GFE and the Merchant Agreements "have no relationship with Hermes, and have not provided Hermes or the [Meridian property] any benefit"; that, contrary to recitations in the Deed of Trust, Hermes "did not receive any funds" that were advanced pursuant to the Merchant Agreements and "never participated in or benefited in

---

[4]    GFE notes in its memorandum that Panos is currently in bankruptcy and that Hellenic appears to be a "dead" entity with no ongoing business activities.

any manner from these Merchant Agreements"; and that, in fact,
Hermes was not even aware of the Merchant Agreements or Deeds of
Trust until after it saw the foreclosure notice in the
newspaper.

Despite GFE's insistence that Hermes' own allegations that
it was unaware of and had no intention to benefit from, and that
it did not benefit from, the Merchant Agreements forecloses any
claim that Hermes is a third-party beneficiary of the Merchant
Agreements, New York law is clear:  In determining whether a
party is an intended third-party beneficiary, the intent of the
purported beneficiary is "irrelevant."  Goodridge v. Harvey
Group, Inc., 778 F. Supp. 115, 134 (S.D.N.Y. 1991) (intent of
putative beneficiary irrelevant to question whether parties to
agreements intended to benefit him).  What is determinative of
the issue is the intent of the parties to the contract.  See
Debary v. Harrah's Operating Co., Inc., 465 F. Supp. 2d 250, 261
(S.D.N.Y. 2006) (issue of third-party beneficiary status "turns
on whether the contracting parties intended their agreement to
directly benefit a third-party").  Thus, the fact that Hermes
was unaware of the Merchant Agreements and thus had no intention
to be bound by or benefit from them has no bearing on whether it
is a third-party beneficiary.  See Goodridge, 778 F. Supp. 120

(finding that party was intended third-party beneficiary despite fact that he was unaware of the agreement).

In determining third-party beneficiary status, "the parties' intent can and should be gleaned from the four corners of the resulting contract; indeed, the primary purpose of reducing an agreement to writing is to fully and completely state the parties' intentions regarding their transaction." Debary, 465 F. Supp. 2d at 261.  "Surrounding circumstances" may also be considered.  See Goodridge, 778 F. Supp. at 135 (quoting Septembertide Publishing, B.V. v. Stein and Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989)) ("both 'the intent of the parties-as revealed in their agreement-and the surrounding circumstances'" considered in determining whether party is intended third-party beneficiary).  Here, the Merchant Agreements, along with the surrounding circumstances, i.e., the Deeds of Trust, are suggestive of an intent by the parties that Hermes would be bound by and receive the purported benefit of the agreements.

2.  Direct Injury

GFE's argument that Hermes has not alleged any direct injury sufficient to give it standing to challenge the Merchant Agreements, proceeds from the premise that the court, in ruling on its motion to dismiss, must accept as true Hermes' allegation

that the Deeds of Trust are null and void due to *ultra vires*.
From there, it reasons that because the Deeds of Trust provide
the only connection between Hermes and the Merchant Agreements,
then, accepting that the Deeds of Trust are void and hence
essentially nonexistent, it follows that there is no connection
between Hermes and the Merchant Agreements; and, without any
such connection, it is impossible for Hermes to have suffered
any injury flowing directly from the Merchant Agreements.

Hermes' complaint asserts two separate factual bases for
its contention that the Deeds of Trust are unenforceable:  (1)
the Deeds of Trust are void and unenforceable because they were
not executed by anyone with corporate authority to act on behalf
of Hermes, and (2) the Deeds of Trust are void and unenforceable
because they were executed as security for usurious, illegal
loans (disguised as Merchant Agreements).  GFE argues that
Hermes "cannot have it both ways."  That is, it cannot contend
that the Deeds of Trust essentially do not exist, being null,
void and unenforceable due to *ultra vires*, and at the same time
claim that it has a tangible direct injury connection to the
Merchant Agreements (via the Deeds of Trust).  According to GFE,
"if Hermes wishes to assert that it suffered a direct injury
flowing from the Merchant Agreements," then "Hermes must

16

stipulate that the Deeds of Trust were validly executed by someone with authority to bind Hermes."

Hermes argues in response that these theories are not, in fact, mutually exclusive, but insists that even if they are, pleading in the alternative is entirely permissible under the Federal Rules of Civil Procedure and is not a basis for dismissal.  Hermes is correct.  Rule 8(d)(2) states:  "A party may set out 2 or more statements of a claim … alternatively or hypothetically, either in a single count … or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  And under Rule 8(d)(3), "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  See 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009), aff'd, 374 F. Appx. 78 (2d Cir. 2010) ("In light of the liberal pleading policy embodied in Rule [8(d)(2)], ... a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case ....").  GFE's argument based on its position that Hermes "cannot have it both ways" is thus rejected.

For its part, moreover, Hermes alleges that it is, in fact, directly harmed by the Merchant Agreements, since the Deeds of

17

Trust which exist as a cloud on its title to the Meridian property, and which were the basis for GFE's institution of foreclosure proceedings, were given as security for obligations purportedly arising under those agreements.  It notes that New York courts have found a nonparty to the underlying contracts to have standing in this very circumstance, see, e.g., Wellington v. Fin. Freedom Acquisition LLC ex rel. Structured Asset Sec. Corp. Reverse Mortg. Loan Tr. 1999-RMI, 132 A.D.3d 506, 18 N.Y.S.3d 33, 34 (2015), and contends that this court should as well, since to hold otherwise would defy logic.  Cf. Meisels v. Meisels, No. 19-CV-4767(EK)(RML), 2021 WL 1924186, at *6 (E.D.N.Y. May 13, 2021) (concluding that mother had standing to challenge validity of son's contract to sell property his mother claimed to own, stating, "It would be absurd if a party could convert someone else's property –then point to a contract – perhaps fabricated – with a prior owner, and thereby preclude the rightful owner from litigating the validity of the contract….").  The court agrees.

3.  New York Prohibition on Corporate Usury Claims

On a different front, GFE points out that under New York law, a corporation or other legal entity may only assert an alleged violation of New York's criminal usury statute as an

18

affirmative defense to an action for payment of the debt and not as the basis for a cause of action for affirmative relief.  See Haymount Urgent Care PC v. GoFund Advance, LLC, 22 Civ. 1245 (JSR), 2022 WL 2297768, at *12 (S.D.N.Y. June 27, 2022) (stating that "New York courts have uniformly construed [New York's usury statute] as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement.").  On this basis, GFE argues that even if Hermes has standing to challenge the Merchant Agreements, it is precluded by New York law from doing so.

GFE's position is clearly without merit as it relates to Hermes' RICO claims, Counts IV and V.  RICO allows "[a]ny person injured in his business or property" by a violation of the Act to bring civil suit for damages, costs and attorney's fees in federal district court.  18 U.S.C. § 1964(c).  Hermes has asserted RICO claims based on collection of an unlawful debt and a pattern of racketeering activity under § 1962(c), and conspiracy to commit the substantive RICO violations, under § 1962(d).  "Broadly stated, a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's 'business or property by

reason of a violation of section 1962.'" HCB Fin. Corp. v. McPherson, 8 F.4th 335, 338 (5th Cir 2021) (quoting Alcorn Cty. v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1167 (5th Cir. 1984), abrogated on other grounds by United States v. Cooper, 135 F.3d 960 (5th Cir. 1998)).

Section 1962(c), the basis of Hermes' principal claim, makes it unlawful for a person "employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Subsection (6) of § 1961 defines "unlawful debt" as:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law … or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the law relating to usury, and (B) which was incurred in connection with the business of … lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). The parties agree that New York law applies to the question whether the Merchant Agreements are enforceable. Under the RICO statute, therefore, Hermes must allege and ultimately prove a violation of New York's usury law

as an element of its RICO substantive and conspiracy causes of
action based on collection of unlawful debt.  See Wade Park Land
Holdings, LLC v. Kalikow, 589 F. Supp. 3d 335, 376 (S.D.N.Y.
2022) (elements of claim based on collection of unlawful debt
are that (1) the debt was unenforceable in whole or in part
because of state or federal laws relating to usury; (2) the debt
was incurred in connection with the business of lending money at
a usurious rate; and (3) the usurious rate was at least twice
the enforceable rate).  But while state law is an element of
this claim, this is not a state law claim for usury but rather a
federal RICO claim that is not limited by the New York
prohibition on corporations asserting affirmative usury claims.
This point was made by the court in Haymount, which, like this
case, also involved a primary RICO claim for collection of
unlawful debt.  There, the court wrote:

> Plaintiffs' entire RICO claim, at least to the extent
> it is predicated on showing the MCA agreements are
> usurious under New York law, involves in some sense
> "us[ing] usury as a sword" in a way that New York's
> usury laws by themselves might not authorize
> plaintiffs to do.  Rather, Congress has chosen to
> provide a federal cause of action that amplifies
> certain state-law rights by allowing plaintiffs to
> bring RICO claims against enterprises engaged in the
> collection of debts rendered unlawful by state law.
> 18 U.S.C. § 1962(c).  Plaintiffs sue under that
> federal cause of action, not under New York's usury
> laws.  ... With that understanding, the flaw in
> defendant's argument becomes clear.  Plaintiffs are

> not ... bringing an affirmative claim to invalidate
> the MCA agreements....  Rather, they are bringing
> federal RICO claims.

Id. at *4.  Courts in numerous other cases have implicitly recognized this distinction.  See, e.g., Fleetwood Servs., LLC v. Ram Capital Funding, LLC, 20-cv-5120 (LJL), 2022 WL 1997207, at *20 (S.D.N.Y. June 6, 2022) (granting summary judgment to plaintiff on RICO claim for collection of unlawful debt based on evidence establishing, inter alia, that debt at issue was "unenforceable at least in part under … New York laws relating to usury"); Lateral Recovery LLC v. Queen Funding, LLC, 21 Civ. 9607 (LGS), 2022 WL 2829913, at *6 (S.D.N.Y. July 20, 2022) (finding that complaint "sufficiently and plausibly allege[d] collection of unlawful debt in violation of RICO" based on merchant agreements alleged to be in fact usurious loans under New York's usury statute).

Hermes' state law claim for a declaratory judgment that the Merchant Agreements are, in fact, usurious loans is another matter.  Hermes argues that although its claims for declaratory judgment, false lien filing and clear title, are, in part, based indirectly on the theory that the Merchant Agreements are unenforceable under New York law, the actual right to relief as to these claims arises under Mississippi law.  It adds that

these claims are in any event not affirmative claims for usury in the sense that New York courts apply the law.  That, however, is plainly not true of its declaratory judgment claim, by which Hermes asks the court to adjudicate the Merchant Agreements to be usurious and for that reason, unenforceable.  Hermes argues that the portions of its state law claims based on an unenforceable, i.e., usurious, loan agreement "are based on (1) the fact that the loans are unenforceable under RICO, which in turn implicates New York usury law, and (2) the fact that the loans are unenforceable pursuant to Hermes' affirmative defense of usury asserted in response to GFE's counterclaim."  Such twisted reasoning cannot save Hermes' declaratory judgment claim, by which it directly asserts that the Merchant Agreements are usurious loans and therefore unenforceable.  This is not a claim based on RICO nor is it asserted as an affirmative defense.  And it is precisely the kind of affirmative claim for usury that a New York court would bar.  See Haymount, 2022 WL 2297768, at *8 (denying dismissal of RICO claim but dismissing declaratory judgment claim).

Unlike Hermes' declaratory judgment claim, however, Hermes' claims for "False Lien Filing" (Count III) and to "Clear Title" (Count VI) are not foreclosed by New York law's prohibition

against a corporation asserting affirmative claims of usury. While the portion of these claims that is based on an allegation that the Merchant Agreements are illegal, i.e., usurious, loans includes as an element of proof that the Merchant Agreements are usurious under New York law, it is nevertheless the case that these claims are based on and governed by Mississippi law, not New York law, just as Hermes' RICO claim is governed by federal law, notwithstanding that such claim requires proof that there were usurious loans under New York law.

4.  RICO damages

RICO "provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions."  HCB Fin. Corp., 8 F.4th at 338 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).  The requirement that a RICO plaintiff prove an injury to its "business or property by reason of a violation of section 1962" has been described as a statutory standing requirement:  "'[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'"  Id. (quoting Sedima, 473 U.S. at 496, 105 S. Ct. 3275)).  "A plaintiff may not sue under RICO unless he can show

24

a concrete financial loss."  Patterson v. Mobil Oil Corp., 335
F.3d 476, 492 n.16 (5th Cir. 2003).

In its substantive RICO count, Hermes alleges damages from
defendant's RICO violations as including "the cloud in title
placed ... on account of the Deeds of Trust ... as well as
attorneys' fees and costs, including the attorneys' fees and
costs associated with exposing and prosecuting these unlawful
activities."  In the conspiracy count, Hermes adds that the
damages from defendants' violations also include "millions of
dollars in improperly collected loan payments."

GFE argues in its opening memorandum that Hermes' RICO
claims are due to be dismissed because of their insufficient
pleading of a cognizable RICO injury.  It argued that Hermes
"has not identified any of its business activities, transactions
or interests whereby the existence of these Deeds of Trust has
somehow inhibited, interfered with, thwarted or otherwise
adversely influenced any aspect of Hermes' business activities
or transactions"; that the assertion of "damages" in the form
of attorneys' fees incurred in Hermes' decision to amend its
complaint to add civil RICO claims should be disregarded, "as
such 'damages' were voluntarily inflicted upon itself"; and
lastly, that "any attorneys' fees that may eventually be awarded

by operation of the RICO statutes or otherwise are not ... not-existing damages that Hermes may have suffered." It further asserts that Hermes' "highly confusing and ambiguous allegation regarding 'millions of dollars in improperly collected loan payments'" should be disregarded, as this cannot be referring to any damages sustained by Hermes, which never made any loan payments.

Hermes' response – perhaps understandably, perhaps not – is hardly informative. In it, Hermes merely asserts that to satisfy Rule 12(b)(6), its complaint only had to include "general factual allegations of injury resulting from the defendant's conduct," and it claims that it has satisfied this standard by alleging "two categories of damages resulting from GFE's actions – a clouded title and monetary damages incurred in relation thereto."

GFE's reply brief is more illuminating of its position than its initial brief. Therein, GFE undertakes to point out that while RICO provides for an award of attorney's fees to a prevailing RICO plaintiff, those attorney's fees are not considered damages for purposes of actually proving the RICO violation. See Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 391 (S.D.N.Y. 2000) (so holding). It appears to take the

position that Hermes' allegation that it has incurred attorneys'
fees and costs in "exposing and prosecution" of defendants'
alleged unlawful activities is an insufficient allegation of
damages to state a claim for relief under RICO.  Assuming
Hermes' allegation about its "exposing and prosecution" of
defendants' unlawful activities is referring to Hermes'
prosecution of its RICO claims in this action, GFE would be
correct.  It is not entirely clear what Hermes means by this
allegation, however.  This, coupled with what the court
considers was a lack of clarity in GFE's initial brief as to the
specific basis for its position on this allegation, and the
court's charge to read the complaint in the light most favorable
to Hermes, the court is reluctant to conclude that this damages
allegation is necessarily insufficient to state a claim.
Moreover, Hermes appears to have alleged that it incurred
attorneys' fees and expenses to prevent the foreclosure of the
property; and the court is not persuaded that those fees are not
even potentially recoverable.

 C. <u>FALSE LIEN FILING (SLANDER OF TITLE) AND CLEAR TITLE</u>

 Count VI (Clear Title) seeks to set aside the Deeds of
Trust, remove the cloud on Hermes' title, and to quiet title in
the property based on Hermes' allegations that defendants'

claims against the subject property based on the unauthorized Deeds of Trust are invalid, interfere with Hermes' free and full use and enjoyment of the premises and constitute a cloud on Hermes' title to the property.  Count III (False Lien Filing) alleges that defendants' filing of the unauthorized Deeds of Trust constitutes a fraudulent lien filing, as defendants "[knew] of their illegal activities and [knew] that the foundation of the deeds of trust and lien filings was false," for which Hermes should recover "penalty and treble damages under Mississippi law."

GFE contends the references in Count III to false and fraudulent lien filings in the land records suggest that Hermes is attempting to assert claims based on Mississippi Code Annotated § 85-7-429(1), which provides that "[a]ny person who shall falsely and knowingly file the claim of lien provided in this article without just cause shall be liable to every party injured thereby for a penalty equal to three (3) times the full amount for which the claim was filed."  As GFE correctly points out, this statute applies only to construction liens.  See Miss. Code Ann. § 85-7-403.  GFE also posits that Hermes is more likely attempting to assert a claim for slander of title; that

does seem to be the case.[5]

  "[T]he general rule of liability for slander of title is
... '[o]ne who falsely and maliciously publishes matter which
brings in question or disparages the title to property, thereby
causing special damage to the owner, may be held liable in a
civil action for damages.'"  Taylor v. Ocwen Loan Servicing,
LLC, Civ. Action No. 2:12-CV-107-SA-JMV, 2014 WL 280399, at *5
(N.D. Miss. Jan. 24, 2014) (quoting Walley v. Hunt, 54 So. 2d
393, 396 (Miss. 1951)).  As is the case here, "[a] claim for
slander of title is usually brought in conjunction with an
action to quiet title."  Id. (citing Jeanes-Kemp, LLC v. Johnson
Controls, Inc., No. 1:09CV723 LG-RHW, 2010 WL 502698, at *2
(S.D. Miss. Feb. 5, 2010)).  To prevail in an action to clear
title, the plaintiff must prove facts showing (1) his own title
and (2) the existence and invalidity of the instrument or record
sought to be eliminated as a cloud upon the title.  Mays v.
Kirk, 414 F.2d 131, 133 (5th Cir. 1969).

  GFE argues that any putative claim for slander of title
must be dismissed because Hermes does not allege that
defendants' actions in recording the Deeds of Trust were
malicious or any facts to show malice.  See Zebe, LLC v.

---

5   Hermes does not address this contention in its response.

Robinson, 296 So. 3d 211, 216 (Miss. Ct. App. 2020) (right of action exists only if filing in land records was malicious, which "requires a showing of evil intent or ill will toward another").  GFE points out that damages for slander of title "are inappropriate if the claimant asserts ownership in good faith," id. at 217, and it argues that since it has filed what it believes to be a bona fide and good faith counterclaim seeking to enforce the Deeds of Trust as valid liens against the property at issue, it follows that Hermes has failed to allege the essential elements of this claim.  This argument is not well taken.  The fact that GFE has asserted a counterclaim seeking to enforce the Deeds of Trust by no means establishes that it has or had a "bona fide" and "good faith" belief that the Deeds of Trust are valid, and certainly does not foreclose a finding that Hermes has alleged, to the contrary, that defendants' actions were malicious.  Looking to Hermes' complaint, it plainly alleges that defendants knew that the Merchant Agreements GFE entered with Panos/Hellenic were illegal loans and that the Deeds of Trust were consequently invalid, and yet filed them in the land records anyway as part of a scheme to collect unlawful debt.  In the court's opinion, a finding that defendants' actions were malicious is a reasonable inference from these

30

charges.6  See Zebe, 296 So. 3d at 216 ("The malicious filing
for record of an instrument *which is known to be inoperative*,
and which disparages the title to land, is a false and malicious
statement, for which the damages suffered may be recovered.").

GFE also argues that Hermes has failed to adequately allege
any damage or injury it has suffered as a result of the alleged
"false filing" of the Deeds of Trust.  Referencing Hermes'
allegation that it was not aware of the Deeds of Trust until it
saw the foreclosure notice in the newspaper, GFE suggests that
this claim must be dismissed based on Hermes' failure to allege
how the mere existence of the Deeds of Trust in the land records
caused it harm.  It contends, more particularly, that the

---

6    GFE argues in its rebuttal brief that Hermes has failed to
plead a viable slander of title claim, as it has not alleged
possession of the subject property or set forth a plain and
concise deraignment of title, both of which are essential
elements of this cause of action.  The court declines to
consider this argument as it was first raised in GFE's rebuttal
brief.  "Arguments raised for the first time in a reply brief
are generally waived," Jones v. Cain, 600 F.3d 527, 541 (5th
Cir. 2010), and may be stricken by the court.  Midwest Feeders,
Inc. v. Bank of Franklin, No. 5:14-cv-78(DCB)(MTP), 2015 WL
11117898, at *1 (S.D. Miss. 2015); see also Coleman v. McKenzie-
Kelly, No. 3:21-CV-168-DPJ-FKB, 2021 WL 3673111, at *2 (S.D.
Miss. Aug. 18, 2021) (quoting Gillaspy v. Dall. Indep. Sch.
Dist., 278 F. App'x 307, 315 (5th Cir. 2008) (stating, "'[i]t is
the practice of ... the district courts [in the Fifth Circuit]
to refuse to consider arguments raised for the first time in
reply briefs.'").

complaint is deficient because Hermes has not "identified any of its business activities, transactions or interests whereby the existence of the (allegedly void/ unenforceable Deeds of Trust has somehow inhibited, interfered with, thwarted or otherwise adversely influenced any aspect of Hermes' business activities or transactions…."

What Hermes has alleged, however, is that it has incurred attorney's fees and expenses to enjoin the threatened foreclosure based on the Deeds of Trust and to remove the Deeds of Trust as a cloud on its title.  In the court's opinion, this is a sufficient allegation of damages to avoid dismissal.  <u>See</u> <u>Jeanes-Kemp</u>, 2012 WL 627515, at *5 (in a cause of action for slander of title, "compensatory and punitive damages, as well as attorney's fees, are recoverable").

<u>CONCLUSION</u>

Based on the foregoing, it is ordered that GFE's motion to dismiss is denied.

SO ORDERED this 24th day of February, 2023.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE